There are two actual matters before the Court this morning. One is a motion to dismiss the appeal filed by the defendant based on res judicata and collateral estoppel regarding the subsequent state court case involving Diane Corbett as personal representative against the subsidiary defendants but not including Manor Care, Inc. The other matter was the initial appeal filed in this Court regarding rulings of the District Court regarding Diane Corbett as personal representative v. Manor Care, Inc. and subsidiary defendants. I will address the motion to dismiss first. I put forth in my objection to the motion to dismiss several arguments why this appeal should not be dismissed as a result of collateral estoppel and or res judicata. The primary argument, unless you want me to discuss any others, is that the state court case in Corbett v. Manor Care Health Services, Manor Care America, and Manor Care of Arizona was based on res judicata and collateral estoppel, which means that the state court judge accepted the trial court's decisions from the federal court case regarding the statute of limitations, and therefore the state court case was never litigated on its merits. It was simply dismissed outright based on res judicata and collateral estoppel. The second reason that this case should not be dismissed at this appellate level... The state court decision went on the district court decision in the case presently on appeal? That's correct. And that state court decision is currently on appeal, I should clarify. And we did have oral argument on August 16th of this year in the state court of appeals, and we are pending, there's a decision pending in that case. And the federal one was based on not serving the subs on time? The dismissal of the subsidiaries was based on not on timely service, and the motion to amend that was filed by the plaintiffs in the federal court requesting leave to amend the complaint because the statute of limitations had not run according to plaintiff's position. Why shouldn't the dismissal stand? It looks as though there was a lot of time to find out which sub actually ran this nursing home and sue the right sub before limitations ran. I could give a variety of answers, Your Honor, but frankly, I don't know. In my mind, I thought that the issue had been resolved. It obviously hadn't been. And I don't know that I can give a variety of answers, Your Honor, but frankly, I don't know. I don't necessarily, I can't offer the court any reasonable explanation for it other than I don't know. I thought it was. I feel like what the case was about at that point was two weeks of poor nursing care resulting in bed sores, but not the proximate cause of the stroke that killed the decedent. So there wasn't really much money involved in terms of damages. Is that my understanding of the case correctly? That's the case as presented by the defense, Your Honor. The plaintiff's case established, the underlining factors of the case established and that were presented in the objection for motion for summary judgment, that this woman was only sent to a nursing home. The goal was just for a couple of weeks. Was the lady out of there in 13 days? She was transferred to a different facility. However, she was only to be placed in the nursing home for two weeks, not because of her own physical care, but her primary caregiver, Diane Corbett, the personal representative in this action, herself needed surgery. That's not really my question. What I really want to know is, did Manor Care or any of its subs have the old lady in their care for more than 13 days? No. And was there any medical evidence that the death was caused by what happened during that 13 days of care or failure to render care? No, Your Honor. But the woman, Mrs. Laux, had the bed sores until her death. And under our elder abuse statute, her legal representatives are entitled to bring a claim for personal injuries, i.e., the bed sores. I understand that. That wasn't my concern. My concern, frankly, was that where your damages aren't that great and it's an expensive case to litigate because of the need for medical experts, if the right defendant doesn't consent to service, you have kind of an economic problem with it. Well, our position is that she wouldn't have even had to be transferred to the second facility had they taken care of her. Had she never got the bed sores, she would have returned home in two weeks. On the motion to amend, kind of a two-part question, it seems to me that Arizona law has changed with respect to the statute of limitations and that the case relied upon by the district judge was ultimately changed by the Supreme Court in the City of Tucson v. Clear Channel Outdoor. If that had been the law at the time, or if the judge had known that that was the law at the time you asked to amend, would the statute of limitations then not have run? And so one of the factors the district judge would have had to consider was that by amending, you would still be within the statute of limitations? Secondly, is that issue on appeal? In other words, when the state court granted judgment based upon res judicata, is one of the things that argued in your state court appeal that the basis of the district judge's decision on the statute of limitations was wrong because of the subsequent decision? Answering your last question first, yes, that was presented to the trial court judge at the state court level, and he didn't accept that. He ruled that the Judge Burry decision on the statute of limitations was collateral estoppel and res judicata. He never gave an opinion of any detail other than that. Your first question was, had the Supreme Court City of Tucson v. Clear Channel case been decided at the time Judge Burry was considering the motion to amend? I would think that he would have had to accept that. Except the amendment. Yes. It wasn't barred, but it wasn't futile because of the statute of limitations. How would that change things? As I look at 12-505, I'm hard-pressed to figure out why that changes your case. Well, going back, the first thing with the motion to amend is we didn't get to 12-505 immediately. Judge Burry denied the motion to amend because the statute of limitations was two years, is what his decision was. And so since it was post-two years, the motion to amend was denied. The motion to reconsider was to point out to Judge Burry that the Arizona Saving Statute 12-505C would provide that we would have a year from the reduction of the initial statute of limitations. Then Judge Burry responded to that by saying, well, based on City of Tucson v. Clear Channel Court of Appeals case, that only applies to unfiled claims, claims that were not previously filed. The Supreme Court of Arizona said that's not, we can't accept that rationale or that ruling for 12-505. Basically, if you say that it only applies to unfiled claims, there's no purpose for 12-505C. It would never apply to anybody, and they couldn't accept that interpretation. So what City of Clear Channel, City of Tucson v. Clear Channel did say is that 12-505 extends the statute of limitation. That statute says it's barred when the amendment takes effect, which would have been in September. And your action wasn't barred at the time that the amendment took effect. The plain language of that statute says that if your cause of action would be barred at the time the amendment takes effect, which would have been in September of 2003, then you get an additional year. If the legislature has shortened, when the legislature changes a statute of limitations and shortens it, and under the new statute your cause of action is no good because of the shortened time, then you get an additional year. But we measure it as of the day the new statute of limitation takes effect. Your case wasn't barred by any statute of limitations until months later. No. It was barred because the two-year statute, the cause of action arose in April of 2001. So the cause of action would have accrued in April of 2003. And so the statute took effect in September of 2003. So my claim would have been barred. Had I filed it on the date that that statute became effective, defense could have argued if we didn't have 12505C in Arizona that my statute of limitations was barred because Mrs. Laux was in the facility in April of 2001. I have just a few questions. Let me understand something about what you just said. I thought what the amendment did is it said you're sailing along, you're just fine, you've got another six months to file your lawsuit, and then the legislature changes the law so that the statute of limitations is shortened, and all of a sudden you're late. Well, what happens now is you're not cut off the way you would be if the new statute was all there is. You don't get the additional six months that you would have had under the old statute of limitations. Instead, you've got one year from when the amendment takes effect. But it looks like that doesn't fit your case. But I don't know if I understand this right. Well, I think the six-month statute you're talking about, Your Honor, is that there's a — I didn't talk about a six-month statute. Oh, okay. Two-year statute. Client comes into your office in a year. You start investigating, figuring out how to bring a lawsuit. After a year and a half, you're ready to file, but you haven't filed yet. You've now got six months left on your statute of limitations. Then the legislature shortens the statute from two years to one year. That, I think, is when you get your additional year on my superficial reading of the statute. Have I got this right? You do, except that I just want to clarify that when this cause of action arose in April of 2001 and through the entirety of this case until the very end — The cause of action endured in April 2001, right?  We had a seven-year statute of limitations. So while we were operating through this entire case, we — the plaintiff had a seven years. The plaintiff could have waited arguably seven years to file the case. There was no delay in getting the case going or even prosecuting the case. The judge then measured the two-year period from the time of which you filed suit, which was April of 2002, which was one year after the cause of action arose. And so the judge measured the two years from April of 2002 until May of 2002, said that's beyond the two-year statute of limitations. You're out. Is that correct? Am I reading this correctly? In the original denial of the motion to amend, he was — my interpretation was, is he just strictly applied a two-year statute. He didn't — the issue of 12505C did not come up until my motion to reconsider brought up the issue of the change in the statute of limitations. That's where it relied on the filed versus unfiled Clearwater case that was later reversed. That's right. Thank you, counsel. Thank you. What can you tell us about the study we were just describing, whether or not if the Supreme Court's ultimate decision in Clearwater had existed at the time the motion for reconsideration was filed, suggesting that the statute hadn't run, wasn't futile, what would have happened? I think the result would have been exactly the same, Your Honor. And the reason is, and Judge Bybee talked about it, and Judge Burry in making his decision, I think, explained clearly that the statute does not apply to this case. And the reason why it does not apply to this case is because, as we discussed earlier, this action was not barred as of the date the new statute of limitations became effective. The statute we're talking about was intended to apply to situations in which someone has not filed an action and they're sitting around their office thinking they have a seven-year statute of limitations. The legislature changes the statute of limitations and shortens it. Well, under most Arizona cases and under the statute, what that could possibly do would be to cut off somebody from filing an action before they really realized they needed to file their action. In this case, this action was already on file. All of the subsidiary defendants had been named as defendants. You're arguing that it was – that it had been – technically, that it had been filed. It's just that nobody had been served. That's exactly correct. So that everybody – as of the day of September 2003, when the statute – new statute takes effect, it is an action that has been filed. It's just that these folks haven't been served. Absolutely. There's no statute of limitations issue. There was no late filing. No filing after limitations had run. The problem is exclusively failure to serve. Yes, sir. What happened is – well, I don't want to say there's no statute of limitations issue because there was one after the dismissal occurred. When they asked to amend the complaint. That's exactly correct. I mean, the reason he denied the amendment was because he concluded that it was due because the statute of limitations barred it, and he cited a case that was later overruled. He cited a case, but if you read the proposition for which he cited it, and then if we read and analyze Clear Channel closely, the same reasoning applies, the same reasoning that Judge Burry applied. All of that survived what the Arizona Supreme Court did in the Clear Channel decision. What Judge Burry decided was that because this action was on file on September 18th of 2003, when the new statute of limitations became effective, 12-505C did not apply because the statute says so that an action under preexisting law would be barred when the amendment takes effect. When this amendment took effect on September 18th of 2003, the action against the subsidiary defendants were not barred. They were on file. In fact, the plaintiffs still had time to complete service. That didn't happen. Let me see if I've got this right. Maybe I've had too many cases. I feel like I may be all mixed up. It looks to me like what happens is, if I remember correctly, plaintiff timely files suit against the parent and all the subs. She doesn't know exactly who's responsible for this nursing home. She sues them all. Everything's fine. Limitations does not bar any of the claims. She fails to serve the subs. The district court dismisses the action against the subs because of failure timely to serve the subs. Everything's now still fine against the parent, and the subs are gone, even though there was no limitations problem. They were sued on time. Now she tries to amend to get the subs back in in order to start the time for serving them over again. And the judge says you can't bring them back in now because now the suit is barred by limitations. So what it's really all about is an attempt to double up on the time available to serve the subs.  I mean, if you can sue them a second time after limitations is run, then you get, what is it, 120 days under Rule 4M or something like that to serve them. If you miss the first 120 days and they get dismissed, you get another 120 days if you can drag them back in. Is that what we're talking about in terms of the stakes? Well, the stakes are basically that the action was dismissed for the reasons we've already talked about, which is because they didn't serve, not only within the 120 days, they didn't serve them for nearly nine months until discovery was closed and dispositive motions were filed. Then the issue pops up and they suddenly realize, oh my goodness, we haven't served. The parties that we have been told are the parties that are responsible for the conducted issue. Now keep in mind, the record shows that in the context of this case, the amendment came about because Manor Care, Inc., the parent company, disclosed to the plaintiff that it was the subsidiaries that actually operated the particular facility. In this case, it was Manor Care of Arizona. So the plaintiff knew full well exactly who needed to be named as a defendant in the case and who needed to be served. That didn't happen. And then when the — I don't think you understood the purpose of my question, because I didn't tell you the purpose of the question. Basically, as I understand the recent Supreme Court decision, I think it was Heritage versus Pioneer, but I can't remember for sure, we're supposed to cut parties some slack on excusable neglect that we were not required to cut slack for before. And that affected, as I recall, our en banc decision in Pinkade versus Andrews in a somewhat different context. But I would think it would affect this context, too. So if all we're talking about is cutting a little slack on a delay, it's pretty appealing. But if you're supposed to serve people in four months or else they have their peace and they can say goodbye to the litigation and goodbye to their lawyers' bills, you're not supposed to get eight months. You're not supposed to be able to double it. So I want to know which kind of case this is, a cut-them-a-little-slack case, or I want to get eight months instead of four months case. I respectfully submit it's not a cut-them-a-little-bit-of-slack case, because, as the record indicates, this is a situation when the plaintiff knew what the plaintiff had to do. I even offered to waive service. All I needed were the forms to be sent to me from the plaintiff's attorney, and I never got them. And there is no explanation for why. Did the judge have the authority at the time under Rule 4M to have extended the time for service? As the precedents existed at that time, I respectfully submit he did not, because absent excusable neglect. It seems like that rule was amended. The time period was expired, and he couldn't extend it. That rule has been amended. The judge cited a pre-1993 rule, and the new rule gives the court the authority to do that without excusable neglect. So assuming the judge had been asked to extend the time to serve, then this case would not be here if he had, because it would have been within the statute of limitations, and it could have been done. If the judge had found there was excusable neglect, certainly we wouldn't be here. Because if he had extended the time to serve, then the case would not have been dismissible for that reason, for failure to serve and having gone to the merits. We would have approached the case differently. We wouldn't wind up with a case in the current posture. Whether ultimately summary judgment would have been granted is uncertain. I assume he extended the time to serve based upon the prejudice that would occur. However, if you're right, by not extending the time to serve, the statute of limitations is run, and so the case is over. If he extends the time to serve and he takes into the prejudice to the parties, then to the plaintiff, then the case doesn't go away. It's decided on the merits. And there's not any indication in the record that he ever considered the prejudice by not extending the statute of limitations. In determining whether there's prejudice to the parties, one of the things that the court ought to consider is what the reason for not effectuating service with the plaintiff. Oh, that's not prejudice. I mean, that might be fault to someone else, but what's the prejudice to you who defended this case versus them where it's not decided on the merits? And in fact, the way that you came to me in this same motion, she said, look, if you don't extend the time to serve, I'm done. And this is the reason I didn't serve. And you say, well, that's pretty prejudicial because my client's not going to get their case decided on the merits. Now, what's your side of the prejudice to you if they extend the time to serve? You've represented all of them. You've offered to consent to service. You've done the discovery. You represented all of them. What's the prejudice? The prejudice is — let me answer that question in two parts, because I'm kind of running close on my time. I want to make sure I have a chance to respond to it fully. First off, the prejudice to the unserved defendants would be that they're now brought into the case after discovery has closed. In Arizona, there is a set of procedures that at least the district courts adopt that pertain to new parties brought in, designation of nonparties at fault, disclosure and everything else. And if we had brought in the additional parties, the parties who had just been dismissed, then that would have, in my opinion, required that the discovery deadline be kicked  Why would it matter? It looks like the same lawyer for all of them, same discovery. And you've offered to consent to service. I did offer to consent to service. That was eight or nine months earlier when we still had time to do what we needed to do. Are you saying you wouldn't have been the lawyer for the sub? No, I would have been the lawyer for the subs. So you've been in the case from the get-go. You've been there for all the depositions, taken whatever depositions you'd wanted? Yes, sir, but the subs had procedural rights, such as the ability to designate nonparties at fault in the case. And they had time periods within to do that designation. I believe it was 150 days. And if we had brought them in at the last minute, that would have at least opened up the door to the possibility that we would have had to kick the discovery and disclosure. Be more specific. In trying to look at your case, certainly things were possible. But it sounds like it's all about how someone was treated in a particular place for 13 days, and that's what you litigated, and there might have been different corporate entities that had different employees there or whatever their various relationships were. As a practical matter, what would have been the difference in the handling of the case? For instance, would you have had to open discovery for something? Was there something that existed that wasn't thoroughly gone over in the discovery? There very well may have been. I'm not asking if there very well may have been because that's why I repeated the question. I mean, it sounds like you're going to have some nurses, you're going to have some hospital records, you're going to have some inspections maybe by state agencies, and the facts are pretty bound up into what happened to this woman in a particular period of time or the chart notes that are made and so forth. So I'm trying to figure out if that's all done, which I assume was, what else would have been a problem for the child-led case if you'd had the remaining entities involved? Let me answer that in two parts. First off, with regard to the actual events of Doris Lauck's care, nothing more needed to be done. With regard to the issues regarding the inter-corporation liability, whether to what extent Medicare, Medicare of America, Medicare Health Services, or Medicare of Arizona was liable or whether they're liable for each other, yes, there would have had to have been additional evidence introduced and presented to resolve those issues. Why would you do that in the case in chief? Don't you bring contribution or indemnity cases after you have the liability? In Alaska we have, I think, a one-year statute, and you can't bring them in the same case. I can't remember for sure anymore. I think that's what we have now. In Arizona, we don't do contribution and indemnity the same way. We have a system of non-parties at fault, and a jury allocates fault according to whatever party participates. Would anyone fool with that? Pardon me? Death to a lady who died shortly thereafter or something else? If the plaintiff is trying to get punitive damages against Manor Care, Inc., the parent company, for the conduct of Manor Care of Arizona, Inc., the entity that owns the local facility, yes, because, you know, Manor Care, Inc. has a lot more money. So you're saying it's the punitives that give the case some economic substance. And I never got to kind of the second part of answering your question, Your Honor, which is all of the issue with regard to the subsidiary defendants is barred by res judicata because there's a judgment in favor of the subsidiary defendants in state court under Arizona law. A bootstrap. The judgment is citing the district court here. And so now you don't get an appeal of the original judgment because you have one in state court that says we've got a federal court. You can't get there from here. It's all circular. It is, Judge, but that's the danger of filing a state court when you have a federal court action. I think it's a final judgment. I don't see how there can be res judicata on anything. Under the Arizona Downs decision, which I cited in the brief, in Arizona, a decision, a judgment, even though it's on appeal, is res judicata for the purposes of res judicata and collateral estoppel. But we can no longer hear an appeal in our court that is a final judgment only in the district court because there's been a subsequent action in state court, and now we're barred from hearing an appeal from one of our own courts? Well, sir, what I'm suggesting and what I'm arguing is when the plaintiff chose to step around the decision of the district court and to file an action in state court involving, in many cases, the same parties that are in this action, that created a substantial risk of exactly what has happened, that a judgment would be entered in favor of those subsidiary defendants in state court, which would then have res judicata effect in this court. I agree it's circular. It's not somewhat circular. It is. It's frankly circular. You lose in one court. That's used to bar you in another court. That's then used to bar you in the first court. It's kind of like a rendezvous thing we used to study back in conflict of laws. But the fact is that danger was created not by anything that the manor care defendants did, but by the plaintiff's decision to file a separate state court action, and then when judgment was entered, that bars any further prosecution of this appeal. Is it barred? Yes. Can I come back to 12-505 before? Yes, sir. Before we ask you to sit down. I'm looking at the language of 12-505, and I understand your argument. I think it's a very curious argument. But I don't see any place in 505 that makes reference to something that suggests that if something has previously been filed, that that doesn't come within 12-505. 12-505 says simply that if the action would be barred when the amendment takes effect, that would be September of 2003. This action, under a two-year statute of limitations, would have been barred in April of 2003. If it had not been filed. What difference does that make? The statute doesn't say anything about that. There's no exception for — except for actions which have been filed. Which means that if we had had any other failure, let's suppose that we had had a — that everybody properly, and then we discovered that somebody wasn't diverse, and that we had to dismiss for one of subject matter jurisdiction. Then there would be — that we would be barred from filing suit? That's entirely possible. But the statute of limitations doesn't run. The statute of limitations runs until, according to that statute, I think until September of 2004. I'm sorry. Give us one more year, which would be April of 2004. It's — yeah. It would be an additional year. And if 12-505C — I'm sorry. It's one year from the time the new law takes effect, which would be September. That's correct. So the statute of limitations would be extended then until September of 2004, which would mean then that she can cure the defect here. If 505C applies here, and if Judge Berry's interpretation was wrong, then she could cure and bring the subsidiaries back into the case, and we start back where we started back in February of 2004 when the dispositive motions were filed. But on your question, Your Honor, about the difference between filed and unfiled claims, all I can say is, is that in the clear channel decision, in the majority opinion, it says — Which page? I'm sorry. It's on — it's 105 Pacific 3rd, 1173. And it's beginning of paragraph 42. It's the majority opinion written by Justice Hurwitz. I'm sorry. Paragraph which? Paragraph 42. Okay. It says the most lawful reading of 12-505 is one that makes it applicable to the entire universe of unfiled claims allegedly affected by new or amended statute of limitations. Justice Birch goes on in the dissent in page 46 to say this case turns initially on the interpretation of ARS 12-505, which specifies the limitations period applicable to cases for which the legislature has changed the limitations period during the life of an unfiled claim. That's page which of Judge Birch's decision? That's paragraph 46. It's the first page of the dissent. It appears on page 1174 at 105 P3rd. I'm not trying to engage in sophistry or semantics here. I'm simply using the language that the court, the Arizona Supreme Court itself, has provided, and it arises out of a situation in which the plaintiff herself has created the problem by failing to serve within the applicable time period. Thank you, counsel. Thank you. We ran through your time, I think, but we ran through the defendant's time and more. Why don't you take another 30 seconds if you have some rebuttal you want to offer? Counsel, do you have a response to counsel's citation to the Clear Channel case and to those paragraphs 42 and 46, which do refer to unfiled claims? They do, but largely the unfiled claim analysis is presented in the dissenting opinion. It is not presented in the opinion. It may be, but the language of unfiled claims does appear in the majority's opinion.  But the majority opinion rejects that as the standard and the basis for its decision. It says specifically in that opinion, and I don't have it in front of me right here, but it says it goes through of where it agrees with the court of appeals analysis, and then it comes to a juncture where it says we have to depart from the court of appeals position at this point. And then the dissenting opinion. Then why would the court have been so imprecise as to refer to unfiled claims in paragraph 42? I think because that was the basis of the court of appeals. That was the court of appeals decision that they were rejecting. If you read the City of Tucson v. Clear Channel Supreme Court case in its entirety, its holding is not that it makes a distinction between unfiled and filed claims. The holding is that the statute of limitations runs one year from the effective date of a reduction of the statute. The dissenting opinion in that Supreme Court case suggests that the court of appeals case making the distinction between filed and unfiled claims should be the majority opinion. However, that was not the majority opinion. In reading the two cases in their entirety, the bottom line is that the Supreme Court case regarding City of Tucson v. Clear Channel does not make any distinction between filed and unfiled claims. I'll leave it at that unless you have any further questions. Thank you.
judges: Kleinfeld, Bybee, Whaley